### GOGGINS *v.* JONES.

1. The phrase, "and to give security for the eventual condemnation-money," appearing in the Civil Code, § 4819, which provides for entering a defense to the levy of a distress warrant, means that the defendant in such warrant must give a bond, with a surety or sureties thereon, for the eventual condemnation-money, and there is nothing in that section authorizing the levying officer to take, in lieu of such bond, a deposit of money as the "security" required by law.
2. Applying the ruling above announced to the case in hand, the court erred in overruling the certiorari.

Submitted May 1, — Decided June 6, 1902.

Certiorari. Before Judge Gober. Cobb superior court. September 19, 1901.

*J. Z. Foster*, for plaintiff.

Fish, J. The sole question involved in this case is, whether or not the defendant in a distress warrant can lawfully interpose a counter-affidavit and replevy the property by depositing a sum of money with the levying officer, instead of giving bond and security for the eventual condemnation-money. The decision of this question depends upon the construction of section 4819 of the Civil Code. The provisions of that section are as follows: "The party distrained may in all cases replevy the property so distrained, by making oath that the sum, or some part thereof, distrained for is not due, and give security for the eventual condemnation-money; and in such case the levying officer shall return the same to the court having cognizance thereof, which shall be tried by a jury as provided for in the trial of claims: *Provided,* that when the levy-

ing officer retains possession of the property of the tenant levied on, it shall not be necessary to give the bond for the eventual condemnation-money." We think that the proviso shows that the " security for the eventual condemnation-money," which the section requires, when the property is replevied,. means a bond with security ; for it provides that when the levying officer retains possession of the property of the tenant levied on, "it shall not be necessary to give *the bond* for the eventual condemnation-money." This exception to the provisions of the section was made by the act of December 17, 1894 (Acts 1894, p. 51), and the use of the expression, " the bond for the eventual condemnation-money," shows that the legislature construed the word " security," contained in the section which was amended, to mean a bond. The adoption, by act of the General Assembly in 1895, of the present Civil Code, wherein the section as it stood before the act of 1894 and the provisions of that act have been codified together, carried this construction into the Civil Code, so that the proviso now construes the precedent provisions of the section in the respect indicated. But aside from this, we think this is the proper construction of the section. In other cases where security is required as a prerequisite to issuing or arresting the progress of legal process, the statute fixes the amount of the security to be given. Thus, the party seeking an attachment must give bond in at least double the amount of the debt sworn to be due (Civil Code, § 4512) ; a claim bond must be double the amount of the execution levied, unless the property levied upon is of less value than the amount of the execution, in which event the claimant must give bond in double the value of the property (§ 4612) ; in illegality. cases, when a bond is given for the forthcoming of the property levied on, it must be in double the value of the property. But the section now under consideration, like section 4639 which applies to applications for the writ of certiorari, leaves the amount of the security to be given indefinite; it simply requires security to be given for the eventual condemnation-money. The security given must cover the eventual condemnation-money. Who is to judge whether a sum of money tendered to a levying officer will be sufficient, at the end of litigation which has just begun, to cover the amount recovered against the defendant ? The law does not clothe the levying officer with authority to fix the amount of the security to be given. It gives him no dis-

cretion in this respect. It says the security given shall be for the eventual condemnation-money. Until the case has terminated in a final judgment, the amount of the eventual condemnation-money is necessarily indefinite and unascertainable; but it is completely covered by a bond given, in accordance with the statute, for no fixed amount, but simply for the eventual condemnation-money. It may or may not be covered by a sum of money which a constable, or other officer, levying a distress warrant, at the time of such levy, deems sufficient for this purpose. The plaintiff may recover his full demand, but only after greatly protracted litigation, causing much more interest to accumulate on the original claim than the levying officer anticipated; the costs may turn out to be much more than he thought they could be; the jury finally trying the case may find damages for delay against the defendant, and the amount of the same, calculated at the per centum fixed by the jury, upon the amount which they find to be due the plaintiff, may greatly exceed the levying officer's anticipations. Besides, if the amount of the security were left entirely to the discretion of the levying officer, he might, in view of the counter-affidavit of the defendant, even see fit to accept an amount less than the plaintiff's claim.

In the case under consideration the sum distrained for was $90. The defendant deposited $95 with the constable who levied the distress warrant; whereupon the constable allowed him to retain possession of the property, and accepted his counter-affidavit. If the constable had the right to accept $95 in money as the security required by the statute, he had the right to accept a bond for a like amount. Suppose, instead of accepting $95 in cash, the officer had accepted a bond in which the liability of the principal and surety for the eventual condemnation-money was limited to $95, would it not be perfectly plain that the bond did not comply with the statute? Such a bond would not have been in accordance with the law, because, under the statute, the amount for which security should have been given had no limit except the amount of the eventual condemnation-money, that is, the amount for which the defendant might finally be held liable; and no levying officer had the right to determine, in advance, that the amount of the eventual condemnation-money would not be more than $95. The word "security" is often used in the code in the sense of "surety." The ap-

plicant for an attachment must "give bond with good security." One filing a claim to property levied on, in order to replevy the property, must give bond "with good and sufficient security." A replevy bond in an illegality case must be "a bond with good security." The party applying for a writ of certiorari, unless he files a pauper affidavit, "shall give bond and good security" for the eventual condemnation-money. It is in this sense that the words, "give security," are used in the section of the Civil Code under consideration. The provisions of this section in question have been the law of this State for nearly a century (see act of Dec. 16, 1811, Cobb's Dig. 900), the words, "give security for the eventual condemnation-money," appearing in the original act; yet, so far as we know, this is the first time that the question here made has been raised. Certainly it has never been before this court before, and we think it can be safely said that, in practice, the construction of the statute has uniformly been in accordance with the views above expressed. It necessarily follows that the court below erred in overruling the certiorari.

*Judgment reversed. All the Justices concurring, except Lewis, J., absent.*