### 26291. GOODSON *v.* SHAHAN.

DECIDED OCTOBER 8, 1937.

*David F. Pope*, for plaintiff in error. *Maddox & Griffin*, contra.

MacIntyre, J. This is a distress-warrant case in which the amount distrained for was $99, and the bond given (upon which the warrant issued) recited that the principal and security acknowledged themselves jointly and severally bound to the plaintiff "in the sum of $195, subject to the following conditions: . . Whereas the said Carl Goodson [the defendant] has made oath according to the law that the sum distrained for is not due, now

should the said Carl Goodson pay the eventual condemnation-money and all costs, then this bond to be void; otherwise to be of force. Witness our hands and seals," etc. The plaintiff moved to dismiss the defendant's appeal from the justice's court, on the ground that "no proper bond for the eventual condemnation-money has been given by the defendant, as a prerequisite to his filing his plea denying that the rent distrained for was due; that the principal and surety in the bond given bound them in the sum of $195 only; that the statute requires that the bond be given for the eventual condemnation-money in the case; and for that reason there was no case pending in the justice's court from which an appeal could be filed." The judge sustained the motion and dismissed the appeal.

■ Was the bond given in this case an eventual condemnation-money bond as required by the Code, § 61-404, which reads as follows: "The party distrained may in all cases replevy the property so distrained, by making oath that the sum or some part thereof distrained for is not due; and giving security for the eventual condemnation-money"? Although the condition of the bond is to "pay the eventual condemnation-money and all costs," it is contended that there should be no fixed amount named in the "recital" in the bond, but that the bond should simply be for the eventual condemnation-money, and because there was a recital of a fixed amount in the bond, even though the fixed amount was in effect double the amount distrained for, the bond was not the eventual condemnation-money bond required by the statute. In Canada Permanent Building & Saving Society v. Lewis, 8 Upper Canada Common Pleas, 352, it was held that "recitals in a bond do not limit the condition, so that an action cannot be brought, except for a breach which clearly comes within the meaning of the recital." In the opinion the court said: "I am of the opinion that the recital does not so override and restrain the condition, as to render void and nugatory that part of it the breach of which is the foundation of the suit. The various authorities on this point seem to me to resolve themselves into determining that the intention of the parties, as expressed in the whole instrument, shall govern; and that when the court can clearly gather that intention, they will construe the condition accordingly, and that it shall be restrained by the recital for that purpose. Such is Lord Ellenborough's exposi-

tion of the law in Parker *v.* Wise (6 M. & S. 247). He observes that all the cases from Lord Arlington *v.* Merrick, downwards, agree that the condition shall be taken with reference to the recital, and may be explained and restrained by it. 'But all this imports that *it is to be gathered from the recital that the intention of the parties requires the condition should be qualified.*' And in Comyn's Digest, Parols A. 19, it is said, 'a recital does not confine subsequent words by which the intent appears more large; as if a condition of an obligation recites, that whereas a ship is bound to A:, and is to return to the port of B., or London, or any port in England; then that obligor shall pay £20 after the next return to the port of B., or L., or other port of England, or elsewhere where she makes her right discharge; if she makes a discharge at Venice he ought to pay.' "

In 9 C. J. 35, § 58, it is said: "The recitals in a bond purporting to express the precise intention of the parties thereto will control its conditions given in general terms, and prevent a more extensive operation of the bond than was intended by the parties as disclosed by the recitals. But a recital not plainly inconsistent with the condition of a bond will not control or limit its operation." In the instant case the bond purports to be a statutory eventual condemnation-money bond given in compliance with the Code, § 61-404, and the recital in the bond is that the principal and surety are bound to the plaintiff in the sum of $195 (practically double the amount distrained for), subject to the following conditions; and the condition thereafter stated in the bond is "to pay the eventual condemnation-money and all costs." We do not think it can be reasonably said that the parties intended that the recital should be plainly inconsistent with the condition of the bond that "the eventual condemnation-money and all costs" should be paid. Under the facts and circumstances in this case, it is reasonably clear that there would be no conflict between the "recital" and the "condition," for it is reasonably clear that no judgment would be obtained exceeding double the amount distrained for, or $195. The Supreme Court in *Burt* v. *Crawford,* 180 *Ga.* 331 (179 S. E. 82), said that "the tenant made affidavit denying that he owed any part of the alleged rent, and with his solvent surety executed a bond in double the amount of the alleged rent due. The bond was payable to the landlord, and was conditioned

to pay the eventual condemnation-money and all costs." As stated in that decision, "there being no question raised as to the sufficiency of the surety, mandamus will lie to compel the sheriff to accept the second counter-affidavit which was accompanied by an appropriate condemnation-money bond, and to return them to the court for trial." Of course it is not authority, but upon an investigation in order to see what forms of bonds were variously used in the past in distress-warrant cases, we have looked at Silverman & Thompson's Form Book published in 1882, and there found that an eventual condemnation-money bond in distress-warrant cases stated a fixed amount which was double the amount distrained for. Blount's Form Book, published in 1898, likewise stated a fixed amount double the amount distrained for. Van Epps' Form Book, published in 1908, leaves a blank space for the insertion of a fixed amount; and so does Gober's Form Book published in 1917, and MacIntyre's Form Book published in 1928. In 9 C. J. 34, § 56, it is said: "Where a bond is given under the authority of a statute in force when it is executed, in the absence of anything appearing to show a different intention it will be presumed that the intention of the parties was to execute such a bond as the law required, and such statute constitutes a part of the bond as if incorporated in it, and the bond must be construed in connection with the statute and the construction given to the statute by the courts. Such a bond must be given the effect which in reason must have been intended by the statute. Whatever is included in the bond, and is not required by the law, must be read out of it; and whatever is not expressed and ought to have been incorporated must be read as if inserted into it. Although the terms of the bond may bear a broader construction, the liability of the parties will be confined to the measure of liability as contemplated by the law requiring the bond; but it will not be assumed that the legislative enactment was intended to import to an instrument an effect different from that intended by the parties." See also 8 A. J. 720, § 32; *American Surety Co.* v. *Googe, 45 Ga. App.* 108, 111 (163 S. E. 293). We think it was the intention of the parties to give a statutory bond and comply with the Code, § 61-404, and that it is reasonably clear that the bond was a substantial compliance with the statutory requirements respecting its form and contents, and was sufficient.

512

The defendant relies on *Goggins* v. *Jones,* 115 *Ga.* 596 (41 S. E. 995). That case is distinguishable on its facts from the instant case. In the *Goggins* case the sole question for decision was, could the defendant deposit $95 in cash in lieu of the eventual condemnation-money bond, where the amount distrained for was $90. In discussing this question the court used as an illustration a hypothetical case with a distress warrant for $90 and a bond for $95, and in effect held that it could not reasonably be said that such a bond would cover the $90, the original amount, plus costs (and interest and damages for delay, if these questions should present themselves in the case). In the *Goggins* case it was reasonably clear that the hypothetical bond therein mentioned would not be sufficient in amount. In the instant case the bond was double the amount distrained for, and it was plainly clear that the bond was sufficient. The court erred in dismissing the appeal on the ground that the bond was not such as the statute required.

*Judgment reversed. Broyles, C. J., and Guerry, J., concur.*